IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES FIDELITY AND
GUARANTY CORPORATION
and FIDELITY AND GUARANTY
INSURANCE UNDERWRITERS,
INC.,

        **Plaintiffs,**

vs.                                                  NO. CIV 97-646 MV/JHG

PEKING PALACE CHINESE
RESTAURANT, INC.,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Lift Stay of Discovery and Pretrial Deadlines filed May 21, 1999 **[Doc. No. 31]** and Defendant's Motion to Enforce Appraisal Award filed May 21, 1999 **[Doc. No. 34]**. The Court, having considered the parties' pleadings, the applicable law, and being otherwise fully informed, finds that Plaintiffs' Motion to Lift Stay is well taken and will be **GRANTED**. The Court further finds that Defendant's Motion to Enforce Appraisal Award is also well taken and will be **GRANTED**.

### FACTUAL BACKGROUND

The Court finds the following material facts to be undisputed:

1.     On March 21, 1996, Defendant Peking Palace Restaurant ("Peking Palace") suffered a loss by fire. At the time of the fire, Peking Palace was covered by an insurance policy ("the Policy") issued by Plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. ("Fidelity").

2. Due to the parties' inability to agree on the amount of net income and operating expenses payable to Peking Palace under the Business Income coverage provisions of the Policy, the parties entered into the binding appraisal process required under the Policy.

3. Pursuant to the appraisal provisions of the Policy, Peking Palace and Fidelity each appointed their own appraisers. The two appointed appraisers then selected Mr. Kimball Udall to act as Umpire in the event they were unable to agree upon the amount of net income and operating expenses or the amount of loss.

4. Under the terms of the policy, the Umpire's decision must be ratified by one of the two appraisers to have binding effect.

5. Although an "award" was reached between the appraisers and the Umpire, it was later withdrawn after it was revealed that the Umpire, Mr. Udall, had a conflict of interest.

6. Fidelity filed the instant lawsuit on May 7, 1997, seeking ratification of Mr. Udall's decision or, in the alternative, declaratory judgment. The parties subsequently filed cross motions for summary judgment. On June 10, 1998, this Court denied all motions after finding that the parties had not fulfilled their contractual obligation to attempt to resolve their dispute through the appraisal process and dismissed Fidelity's complaint as premature. Notwithstanding this dismissal, Peking Palace maintains a counterclaim before the Court. On July 27, 1998, the Court then issued a stay of discovery and pretrial deadlines until the parties had fulfilled their contractual obligation to submit their dispute for appraisal.

7. In accordance with the Court's ruling, the parties undertook a second appraisal with Mr. Richard Hensleigh acting as appraiser for Fidelity, Mr. William Young acting as appraiser for Peking Palace, and Mr. Bruce E. Kaufman, Esq. acting as Umpire. Unable to reach an agreement

as to the amount of loss on their own, the appraisers submitted their positions to Mr. Kaufman for determination.

8. On or about January 12, 1999, Mr. Kaufman notified the parties that he was awarding Peking Palace $58,635 as follows:

   (a) Loss attributable to building repairs ($22,900)
   (b) Loss of business income ($21,407)
   (c) Unreimbursed expenses ($14,328)

9. Soon after notification of the award, the appraisers each sent Mr. Kaufman a letter requesting clarification of his award. Mr. Kaufman agreed to meet with the appraisers on February 18, 1999.

10. On February 21, 1999, Mr. Young notified Mr. Kaufman that Peking Palace would accept Mr. Kaufman's award only as to the building repairs of $22,900.

11. On March 9, 1999, Fidelity, through Mr. Heinsleigh, attempted to withdraw from the appraisal process. Fidelity stated in writing that they considered neither party to have accepted the award of $58,635. Fidelity further stated that they viewed the appraisal process as having been completed and the contractual obligations of the parties to appraise the loss as having been satisfied.

12. On March 11, 1999, Fidelity filed the instant Motion to Lift Stay of Discovery and Pretrial Deadlines, arguing that this second appraisal process had failed to result in an award and was terminated.

13. On March 22, 1999, Mr. Kaufman notified this Court that he had only been able to reach a limited accord with Peking Palace as to the building repairs in the amount of $22,900. Mr. Kaufman also advised the Court he disagreed with Fidelity's position that the appraisal process

3

had been concluded as of March 9, 1999. Finally, Mr. Kaufman informed the Court that he was unable to determine whether Peking Palace had incurred unreimbursed expenses in the amount of $14,328 or $25,090 without additional information regarding Fidelity's prior payments.

12. On March 26, 1999, Judge Kaufman informed the Court that complete agreement as to the appraisal of loss had been reached with Peking Palace in the total amount of $69,397 as follows:

   (a)   Loss attributable to building repairs ($22,900)
   (b)   Loss of business income ($21,407)
   (c)   Unreimbursed expenses ($25,090)

Judge Kaufman advised the Court that he increased the award for unreimbursed expenses in the amount of $14,328 to $25,090 after receiving additional information from Peking Palace's appraiser.

## LEGAL STANDARD

As a preliminary matter, this Court must determine the appropriate standard of review to apply to an appraisal award. A federal court sitting in a diversity action must apply the substantive law of the state in which it sits. *See Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115 (10th Cir. 1999). If there is no ruling by the state's highest court, then the federal court must "apply what they find to be the state law after giving 'proper regard' to the relevant rulings of other courts of the state." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *see also Duke v. Grady Mun. Schools*, 127 F.3d 972, 978 (10th Cir. 1997). When state law is unclear, the federal court must predict how the state's highest court would resolve the issue. *See Armijo v. Ex. Cam., Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). In doing so, the federal court should consider "decisions of other states, and the general weight and trend of

4

authority." *Id.* at 407.

This Court is unaware of any New Mexico case law addressing the standard of review to be applied to an appraisal award. However, decisions of other federal and state courts provide guidance in this area. The general weight of authority indicates that a court's role in reviewing appraisal awards is very limited. *See Couch on Insurance* 2d § 50:257; *Lakewood Mfg. Co. v. Home Insur.*, 422 F.2d 796, 798 (6th Cir), *cert. denied*, 400 U.S. 827 (1970) (Ohio law); *Central Life Insur. v. Aetna Cas. & Sur.*, 466 N.W.2d 257, 260 (Iowa 1991); *Erickson v. Farmers Union Mutual Insur.*, 311 N.W.2d 579 (N.D 1981); *Silverman v. Firemen's Fund American Insur.*, 96 Nev. 30 (Nev. 1980). While the appraisal process can be distinguished from arbitrations,[1] courts generally will apply to appraisal awards a standard of review comparable to that used for arbitration awards. *See Mitchell v. Aetna Cas. & Sur.*, 579 F.2d 342, 350 (5th Cir. 1978) (Mississippi Law); *Lakewood Mfg Co. v Home Insur.*, 422 F.2d at 798. Like arbitrations, appraisals are consistent with the public policy of discouraging litigation and are looked upon favorably by the courts. *See Couch on Insurance* 2d § 50:3; *Nickels v. Ohio Farmers Insur.*, 237 F. Supp 904, 906 (N.D.CA. 1965) (appraisals encouraged to ease congestion in the courts and speed up resolution of disputes); *Shaw v. Kuhnel & Assoc.*, 102 N.M. 607 (1985) (New Mexico public policy encourages arbitration of disputes in the interest of judicial economy).

As a result of its favored status, courts will generally not interfere with an appraisal award

---

[1] Arbitration is typically conducted in a quasi-judicial proceeding with hearings and sworn witnesses and often encompasses both questions of law and fact. Appraisal on the other hand is generally more informal in that the appraisers are not under oath, are not obliged to hear evidence and may proceed by ex parte investigation. In addition, appraisal extends only to a determination of actual cash value, all other issues being reserved for decision by a court. *See Couch on Insurance* 2d §§ 50:5-50:6.

5

except to prevent a manifest injustice. *See* 44 *Am. Jur. 2d Insur.*, §§ 1692-1693; *FDL Inc. v. Cincinnati Insur. Co.*, 135 F.3d 503 (7th Cir. 1998)(Indiana Law); *Mitchell v. Aetna Cas & Sur Co.*, 579 F.2d at 350 (5th Cir. 1978) (Mississippi Law); *Auto-Owners Insur. Co. v. Kwaiser*, 190 Mich. App. 482 (1991). It has been held that every reasonable presumption will be granted to sustain an appraisal award and that an appraisal award once entered is conclusive and final. *Id.* Such award will not be vacated unless it clearly appears that it was made without authority or was the result of bad faith, fraud, mistake or abuse of power. *See Couch on Insurance 2d* § 505:257; 44 *Am Jur. 2d Insur.* § 1692; *FDL Inc. v. Cincinnati Insur.*, 135 F.3d 503; *Lakewood Mfg Co. v Home*, 422 F.2d at 798; *Central Life Insur. v. Aetna Cas. & Sur.*, 466 N.W.2d at 260; *Munn v. National Fire Ins. Co.*, 237 Miss 641 (1959); *Providence Lloyds Insur. v. Crystal City Independent School District*, 877 S.W.2d 872, 875 (Tex.App. 1994).

By analogy, in the context of arbitration, the New Mexico Supreme Court, pursuant to section 44-7-12(A) of the New Mexico Arbitration Act, has routinely upheld arbitration awards in the absence of mistake, fraud, undue means or abuse of authority. *See Medina v. Foundation Reserve Ins. Co.*, 123 N.M. 380 (1997); *Fernandez v. Farmers Ins. Co. of Arizona,* 115 N.M. 622, 626 (1993); *Town of Silver City v. Garcia*, 115 NM. 628, 631 (1993); *Spaw-Glass Construction Services v. Vista de Santa Fe*, 114 N.M. 557, 559 (1992); *Melton v, Lyon*, 108 N.M. 420, 422 (1989) (arbitration award will only be disturbed in exceptional circumstances). This Court recognizes that appraisals are not governed by the New Mexico Arbitration Act. However, the Court finds that appraisals and arbitrations further similar public policy interests, including easing congestion in the courts, speeding up resolution of disputes and providing a more economical means to dispose of cases. In order to encourage out of court settlement of disputes,

this Court will apply a deferential standard of review to appraisal awards comparable to the review of arbitration awards under New Mexico law. Therefore, in the interest of comity, this Court will enforce the appraisal award as final and conclusive unless fraud, mistake, undue means, or abuse of authority can be proven. *Id.*

## DISCUSSION

Applying these principles to the present case, the Court finds that the appraisal award entered by Mr. Kaufman was proper and should be enforced. The Court begins with the presumption that an appraisal award arising from a contractual obligation is conclusive and final. *See* 44 *Am. Jur. 2d Insur.*, §§ 1692-1693; *FDL Inc. v. Cincinnati Insur.*, 135 F.3d 503; *Mitchell v. Aetna Cas & Sur Co.*, 579 F.2d at 350. Although raising several peripheral arguments, Plaintiffs challenge the award on essentially two grounds: (1) the award was obtained in a procedurally defective manner, and (2) the Umpire exceeded his scope of powers in making the appraisal award. The Court will address each of these arguments in turn.

### I.  Procedural Irregularities

Plaintiffs argue that the appraisal process was procedurally defective on two grounds. First, Plaintiffs contend that Defendant's partial acceptance of the Umpire's award on February 21, constituted a rejection of the award and effectively terminated the appraisal process. Second, Plaintiffs assert that the award obtained after March 9, when Plaintiffs had notified Defendant and the Umpire of their "withdrawal" from the appraisal process and had filed the present motion before the Court, was the result of an invalid *ex-parte* proceeding and should not be enforced. The Court is not persuaded by either of Plaintiffs' arguments.

As an initial matter, the Court notes that it is not within the scope of the Court's powers

to determine the procedures under which a contractually required appraisal process should be conducted. *See*, *Wailua Assoc. v. Aetna Cas. & Sur. Co*, 904 F. Supp 1142) (appraisers and umpires, rather than the court, must determine the process to be followed in conducting the appraisal). The Court may only interpret and enforce the contractual safeguards and procedures that the parties have decided should control their appraisal process. The appraisal process is governed by the insurance policy contract which states in relevant part:

> The appraisers will state separately the amount of Net income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. *Plaintiffs' Motion to Lift Stay at 11-12*.

In determining whether the alleged procedural irregularities subjected the appraisal award to fraud, mistake, undue means or abuse of process, thus rendering it invalid, the Court will only construe the requirements of the appraisal agreement. Where the insurance policy is silent to the formalities of the appraisal process, the Court will look to the reasonable expectations of the insured, Defendant Peking Palace. *Rummel v. Lexington Insurance Company*, 123 N.M. 752, 759 (1997) (a court's construction of an insurance policy should be guided by reasonable expectations of the insured). With these principals in mind, the Court will address the procedural irregularities alleged by Plaintiffs.

### A. Defendant's Partial Acceptance of the Award

Plaintiffs argue that the appraisal process failed to result in an award and therefore Plaintiffs have fulfilled their contractual obligation to submit to the appraisal process. Specifically, Plaintiffs contend that Defendant improperly accepted only the building repairs portion of the award on February 21. To support this argument, Plaintiffs ask the Court to adopt a strict contract law construction of the appraisal process. According to Plaintiffs, under contract law,

8

once the Umpire had made his award determination, Defendant's appraiser was obliged either to unconditionally accept the award in full or reject the award. Citing to basic contract law of offer and acceptance, Plaintiffs argue that Defendant's acceptance of the award only as to the building repairs was in essence a counteroffer and therefore a rejection. *See, e.g., Tasch v. Hamilton-Erickson*, 76 N.M. 729 (N.M. 1966). Accordingly, Plaintiffs contend that the unwillingness of either Plaintiffs and Defendants to accept the appraisal award in its entirety as of February 21 indicates that the appraisal process had failed.

While not disputing that Plaintiffs have correctly recited contract law's mirror image doctrine, the Court does not believe that this doctrine is properly applied to the appraisal forum agreed to by the parties. The appraisal agreement does not require that a party accept an award in its entirety. Rather, the agreement merely states that, "[a] decision agreed to by any two [of the appraisers or the umpire] will be binding." The appraisal agreement envisions that an accord be reached as to the entire amount of loss, but does not specify that the accord cannot be reached in a piecemeal manner. The Court views the appraisal agreement silence on this point to be significant. As a general rule, the appraisal process contemplates a flexible and open arena through which an assessment of damages can be determined. Applying strict contract principles to the appraisal process would undermine its informal nature which makes the process a favored alternative to litigation. A preferable approach is to consider the appraisal process ongoing, allowing appraisers to continuously consider and evaluate their findings until an agreement is reached. Since the appraisal agreement does not require a party to accept the Umpire's award in its entirety, the Court will not presume to make such a requirement. The Court therefore, finds that Defendant's partial acceptance of the Umpire's award did not constitute a rejection of the

9

award and did not terminate the appraisal process. Rather, the Court finds that Defendant's acceptance of the building repairs portion of the award constituted a partial and binding accord in the ongoing appraisal process. In making this finding, the Court defers to the Umpire's statement to the Court that a partial agreement had been reached between himself and the Defendant's appraiser and that he did not consider the appraisal process to be complete as of March 22. The Court finds no fraud, mistake or undue means in Defendant's partial acceptance of the appraisal award that would justify setting aside the award.

### B. Post-"Withdrawal" Proceedings

Plaintiffs also argue that as of March 9, 1999, Plaintiffs withdrew by letter from the appraisal process and filed the present motion before the Court, effectively terminating the process and rendering any award obtained after that date to be invalid. Plaintiffs characterize the subsequent communications between Defendant's Appraiser and the Umpire as *ex parte* proceedings which subjected the Plaintiffs to unspecified prejudice. The Court is not persuaded by this argument.

As an initial matter, the Court finds that Plaintiffs' March 9 "withdrawal" from the appraisal process was not proper under the contractual terms of the appraisal agreement. The insurance policy specified that either party may make "written demand for appraisal of the loss." Plaintiffs' Motion to Lift Stay at 11. Once such a demand was made, the Plaintiffs were contractually bound to submit to the appraisal process until a binding decision regarding the disputed loss was reached by any two of the appraisers or the Umpire. The appraisal agreement does not contemplate any withdrawal from the process by the parties, and the Court can only assume that such a withdrawal would constitute a breach of the insurance contract. Plaintiffs

attempt to justify their letter of withdrawal by stating that they viewed the appraisal process as having been completed as of February 21, 1999, when Defendant accepted only a portion of the award. The Court reiterates its finding that the appraisal process was not completed on that date. The Court will not give effect to Plaintiffs' erroneous conclusion that the appraisal process was completed by penalizing Defendant for proceeding with its contractual obligation to appraise its losses. Furthermore, the Court finds Plaintiffs' arguments that they considered the appraisal process to be completed as of March 9, 1999 to be very disingenuous. It appears to the Court that Plaintiffs, anticipating that they would have to make further payments to Defendants, attempted to withdraw from the appraisal process before a complete agreement could be reached. While the Court will not at this time make a determination that Plaintiffs acted in bad faith, the Court also does not believe that Plaintiffs' attempted withdrawal on March 9, 1999 terminated the appraisal process.

The Court also dismisses Plaintiffs' argument that the post-"withdrawal" communications between Defendant's appraiser and the Umpire are tantamount to *ex parte* proceedings. The Court notes that in contrast to arbitration, appraisal proceedings are attended by a large measure of informality. Unlike arbitrators, appraisers may proceed by *ex parte* investigation, so long as the parties are given the opportunity to make statements and provide explanations with regard to the matters in issue. *See Aetna Cas. & Sur. Co. v. Insurance Commissioner*, 293 Md. 409, 419 (Md. App. 1982); *Silverman v. Fireman's Fund American Insur.,* 96 Nev. 30, 32 (Nev. 1980) *Delmar Box. Co. v. Aetna Ins*. Co., 309 N.Y. 60, 64 (NY App. 1955). Plaintiffs were provided with notice concerning the nature of the communication between Defendant's appraiser and the Umpire and had adequate opportunity to respond. Viewed in its entirety, the Court finds that the

appraisal process after Plaintiffs attempted withdrawal falls well within the parameters delineated by the contractual appraisal agreement. The appraisal agreement only requires that the parties "submit their differences to the umpire" and that "[a] decision reached by any two will be binding." *Plaintiffs' Motion to Lift Stay at 11-12*. There is no requirement that the parties submit these differences in the presence of each other. Furthermore, by its very terms, the appraisal agreement contemplates that one appraiser may not necessarily agree with or participate in the decision reached by the other appraiser and the Umpire. The Court believes that the appraisal agreement permits the parties to communicate separately with the Umpire, provided that no fraud or improper bias results. Therefore, the Court considers the post-"withdrawal" interaction between Defendant's appraiser and the Umpire as complying with the requirements of the appraisal agreement. The appraisers of Plaintiffs and Defendant each had an opportunity to submit their loss calculations to the Umpire. The Umpire came to its final March 22 award after receiving certain clarifications from Defendant's appraiser. Plaintiffs were given the opportunity to participate in this process, but refused. The Court does not find that Defendant's appraiser violated the contractual appraisal agreement by continuing to supply information to the Umpire after Plaintiffs' "withdrawal." Rather, the final appraisal award agreed to by Defendant's Appraiser and the Umpire satisfied the contractual provision that "[a] decision reached by any two will be binding."

As a final matter, the Court does not find that any prejudice resulted from the post-"withdrawal" communications between the Defendant's Appraiser and the Umpire. The Umpire stated that it was initially unable to calculate its award as to the unreimbursed expenses with certainty due to incomplete information from Defendant's appraiser. The Umpire, upon receipt of

12

additional information regarding the prior payments by Plaintiffs, was able to conclude that Defendant incurred unreimbursed expenses in the amount of $25,900. Plaintiffs do not allege any bias, impartiality, or fraud on the part of Defendant's appraiser or the Umpire in arriving at this calculation. Plaintiffs were apprised of the ongoing communications between Defendant's appraiser and the Umpire and had every opportunity to offer contrary documentation for the Umpire's consideration. Having refused to participate in the process, Plaintiffs cannot now claim prejudice.

## II. Abuse of Umpire's Powers

Plaintiffs briefly state that the Umpire exceeded his powers by awarding damages outside the scope of the insurance coverage, but fail to fully address the issue. *Plaintiffs' Reply in Support of Motion to Lift Stay*, at 3. The only support for this contention is Plaintiffs' bare assertion that unreimbursed expenses are not covered under the insurance policy, while Defendant counters that such losses are covered. With such a minimum of evidence on this issue, the Court cannot make a determination that the Umpire acted outside the scope of his powers in making this award.

In fact, Plaintiffs are aware that they have not fully presented this issue to the Court. Rather, Plaintiffs request that if the Court grants Defendant's Motion to Enforce the Appraisal Award, Plaintiffs be granted leave to file a Motion to Vacate the Award addressing the alleged Umpire's abuse of his powers. *Id* at fn.1. The Court is addressing the validity of the appraisal award in the present motion. Therefore, any additional motions on this issue, though characterized by Plaintiffs as a Motion to Vacate, would in essence be a Motion to Reconsider the Court's present ruling. It is not proper motion practice for a party to reserve relevant arguments

13

on an issue for a later motion. A Court reviewing a prior order will not consider new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed. *Chasner v. Freedom Stores, Inc*. 98 F.3d 572 (10th Cir. 1996) (refusing to consider new argument in a motion to amend summary judgment); *Johnston v. Cigna Corp.*, 789 F. Supp 1098, 1101) (D. Colo. 1992), *aff'd*, 14 F.3d 486 (10th Cir. 1993), *cert. denied*, 514U.S. 1082 (1995). Thus, a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider, a motion to amend judgment, or a motion seeking relief from judgment. *See Renfro v. City Emporia*, 732 F. Supp 1116, 1117 (D. Kan. 1990) *aff'd*, 948 F.2d 1529 (10th Cir. 1991). Plaintiffs had an opportunity to address the Umpire's alleged abuse of powers in the present motion, clearly indicated that they had such an argument available, but decided to reserve this argument for a later motion. Plaintiffs provide no excuse for the failure to raise the argument in the present motion, other than their claim that they do not believe the Court has grounds to enforce the appraisal award. If Plaintiffs are convinced that there are no grounds to enforce this appraisal award it would have been prudent to raise all their arguments against the award. The Court will not consider a later motion on the validity of this appraisal award which raises arguments that were readily available to Plaintiffs in the present motion. Due to Plaintiffs' refusal to make their argument in the present motion, the Court finds that there is no basis for Plaintiffs allegation that the Umpire abused his powers. As such, the Court will not set aside the appraisal award on this ground.

## CONCLUSION

Applying the appropriate standard of review to the appraisal process, the Court does not find that the procedural irregularities alleged by Plaintiffs constitute fraud, mistake, undue means

or abuse of power. *See Couch on Insurance 2d* § 505:257; 44 *Am Jur. 2d Insur*. § 1692; *FDL Inc. v. Cincinnati Insurance Co.*, 153 F.3d 503; *Lakewood Mfg Co. v Home*, 422 F.2d at 798; *Medina v. Foundation Reserve Ins. Co.*, 123 N.M. 380 (1997). Accordingly, the Court considers the appraisal award in the amount of $69,397 to be final and conclusive. As a consequence of this ruling, the Court finds that the parties fulfilled their contractual obligation to submit to the appraisal process and that the stay of discovery and pretrial deadlines issued on July 27, 1998 should be lifted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Enforce the Appraisal Award filed May 21, 1999 **[Doc. No. 34]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Lift the Stay of Discovery and Pre-Trial Deadlines filed May 21, 1999 **[Doc. No. 31]** is **GRANTED**.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiffs
  Joe A. Sturges

Attorney for Defendant
  Richard S. Mackenzie